UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



| | |
|---|---|
| HOWARD LANCE METTLER, ATTORNEY IN FACT FOR HOWARD METTLER; AND HOWARD METTLER,<br><br>Plaintiffs,<br><br>vs.<br><br>ABILITY INSURANCE COMPANY, ABILITY REINSURANCE HOLDINGS (BERMUDA) LTD., ABILITY REINSURANCE (BERMUDA) LTD., TRIPLUS SERVICES, INC., TRIPLUS ADMINISTRATIVE SERVICES, INC.,<br><br>Defendants. | 1:14-CV-01021-CBK<br><br>ORDER AND OPINION |

Howard "Lance" Mettler ("Lance"), son of and attorney in fact for Howard Mettler ("Mettler"), filed a complaint against the defendants alleging breach of contract, fraud, deceit, and bad faith, and seeking punitive damages as well as attorney fees. These accusations are based upon a long-term care insurance policy purchased in 1988 by Howard Mettler through Medico Life Insurance Company ("Medico"), a policy which defendants admit Ability Insurance Company ("AIC") has assumed the responsibility to adjust, manage, and pay claims as appropriate under the policy. Plaintiff alleges that Ability paid half of what was owed under that policy to Mettler. Plaintiff contends, *inter alia*, that Defendants are an association of entities acting together for the purpose of providing long-term care insurance under the name Ability Insurance and also act as the alter egos or agents or both of each other.

There are three pending motions. They include a motion to dismiss by defendant TriPlus Services, Inc. ("TriPlus") for failing to state a claim at Doc. 23, a motion to dismiss by defendant TriPlus Administrative Services, Inc. ("TriPlus Administrative") for failing to state a claim at Doc. 25, and a motion to dismiss party Ability Reinsurance Holdings (Bermuda) Ltd. ("ARH") at Doc. 48. For the following reasons, all three motions should be granted.

**BACKGROUND**

Howard Mettler is a resident at Avera Eureka Health Care Center, a facility located in Eureka, South Dakota. Mettler bought a long-term care policy from Medico in 1988. He maintained that policy for over fifteen years, which allowed the maximum daily benefit allowed under the policy to increase to $87.50 a day. That daily benefit is designed for long-term care when that care is deemed medically necessary by the policyholder's treating physician. In July, 2009, Mettler's treating physician determined it was necessary for Mettler to be placed in the Avera Eureka Health Care Center. Mettler has resided there since.

In 2007, Medico Life Insurance Company was acquired by Ability Resources, Inc., and Medico became Ability Insurance Company ("AIC"). AIC is the entity that contracts with insureds to provide insurance. AIC and its owner, Ability Resources, have a number of related entities. Ability Resources Holdings, Inc. is the holding company for Ability Resources. Ability Resources has since changed its name to TriPlus Services, Inc. Plaintiff alleges that all the named defendants are an association of entities acting together for the purpose of providing long-term care insurance under the name "Ability Insurance" and also act as the alter egos or agents or both of each other, and that all defendants are ultimately owned and controlled by the same small group of individuals and investors. The defendants deny such allegations and maintain they are separate entities.

2

Ability received a claim made on behalf of Mettler for the benefits owed under the policy. Plaintiff contends that Ability only paid fifty percent of what was owed. Counsel was hired and the parties began a mediation process that failed. In July, 2014, Plaintiff states he received a check for the amount of $103,743.75 as an "accommodation to (Mettler) and in the interest of satisfying a former valued policy holder." A complaint was filed thereafter, followed by an amended complaint including TriPlus and TriPlus Administrative as defendants. Plaintiff admits that Mettler was compensated for the due benefits but claims additional damages for money and time spent attempting to recover the contractual benefits.

The first motion, Doc. 23, contends that dismissal is proper due to failing to state a claim upon which relief may be granted. The second and third motions, Docs. 25 and 48, respectively both contend that the Court lacks personal jurisdiction over those defendants. They also contend that the plaintiff is not entitled to any relief. Plaintiff states that each defendant was either no stranger to the contract or that through the alter ego theory, each defendant can be liable for the actions of another, and that there is a claim upon which relief may be granted.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 9(b) requires a party that is alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). This particularity requirement demands a higher degree of notice than that required for other claims. U.S. ex rel. Costner v. U.S., 317 F.3d 883, 888 (8th Cir. 2003). The claim must identify, who, what, where, when, and how. Id. Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the

3

particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations. Id.

Under Federal Rule of Civil Procedure 12(b)(1), the court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (quoting Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990) (internal citations omitted.) There are two types of subject matter jurisdiction challenges under Rule 12(b)(1): "facial" attacks and "factual" attacks. Titus, 4 F.3d at 593 (8th Cir. 1993). In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Id. By contrast, a factual attack depends upon the resolution of facts in order to determine whether subject matter jurisdiction exists. Osborn v. U.S., 918 F.2d 724, 730 (8th Cir. 1990). A court may rely upon matters outside the pleadings when considering such an attack, and the non-moving party does not receive the benefit of Rule 12(b)(6)'s safeguards. Id.

Under Federal Rule of Civil Procedure 12(b)(2), the court may dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff 'must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state.'" Denver v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). If jurisdiction is denied or controverted, then the plaintiff carries the burden of showing such facts exist to support jurisdiction. Id.

4

To defeat a motion to dismiss based on personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citation omitted). Plaintiff's prima facie showing of jurisdiction is not tested by the pleadings alone, but also "affidavits and exhibits presented with the motions and in opposition thereto." Dever, 380 F.3d at 1072. A court considering whether personal jurisdiction is proper "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 592 (8th Cir. 2011).

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). In order to decide the motion to dismiss under Rule 12(b)(6), the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The factual content in the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To establish breach of contract under South Dakota Law, a plaintiff must show (1) an enforceable promise, (2) breach of that promise, and (3) resulting damages. E.G. Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884, 894 (S.D. 2006). A plaintiff is entitled to recover

5

"all his detriment proximately caused by the breach, not exceeding the amount he would have gained by full performance." Bad Wound v. Lakota Cmty., Homes, Inc., 603 N.W.2d 723, 725 (S.D. 1992). Punitive damages "are not ordinarily recoverable in actions for breach of contract, because, as a general rule, damages for breach of contract are limited to the pecuniary loss sustained." Grynberg v. Citation Oil and Gas Corp, 573 N.W.2d 493, 500 (S.D. 1997) (quoting Hoffman v. Louis Dreyfus Corp., 435 N.W.2d 211, 214 (S.D. 1989). However, the majority of jurisdictions allow punitive damages in breach of contract cases under certain circumstances, including: conversion; forgery; breach of fiduciary duty; tortious interference with business expectancy; intentional breaches accompanied by willful acts of violence, malice or oppressive conduct; fraud; and breach of covenant of good faith and fair dealing. Grynberg, 573 N.W.2d at 500. "Punitive damages may arise in these situations when the complaining party can prove an independent tort that is separate and distinct from the breach of contract." Id. The accompanying tort "may occur at the time of and in connection with the breach, or may arise out of the same transaction" as the breach of contract." Id.

## DISCUSSION

### I. TriPlus Services, Inc.'s Motion to Dismiss

TriPlus moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and/or 9(b). In support of that position, TriPlus contends that it had no contract with the plaintiff and, therefore, it would be impossible for TriPlus to be liable for any alleged breach. TriPlus also contends that the plaintiff cannot demonstrate any damages. Plaintiff argues that TriPlus was a party to the contract through the alter ego theor, and that there are sufficient bad faith actions by TriPlus to create a cause of action. The plaintiff also believes he is entitled to

6

punitive damages under the "independent tort doctrine." Additionally, the plaintiff seeks attorney fees, citing SDCL 58-12-3.

Dismissal under Fed. R. Civ. P. 12(b)(6) is proper. Rule 12(b)(6) states that a party may assert the defense of failure to state a claim upon which relief may be granted. Defendant TriPlus claims that, due to the fact that plaintiff received a check in the amount of $103,743.75, the plaintiff is not entitled to any relief.

Plaintiff admits that he received a check that is based on contract benefits and included interest that was due. Plaintiff contends that he has shown bad faith conduct and would also be entitled to attorney fees. However, punitive damages through bad faith actions are not recoverable in South Dakota absent a showing of entitlement to compensatory damages. Schaffer v. Edward D. Jones & Co., 521 N.W.2d 921, 928 (S.D. 1994). "The rationale of the rule requiring actual damages before punitive damages may be awarded is that we do not punish conduct, no matter how malicious or reprehensible, which in fact causes no injury." Id., quoting Dicker v. Smith, 215 Kan. 212, 523 P.2d 371, 375 (1974).

Plaintiff contends that the independent tort doctrine allows him to recover punitive damages. In doing so, he alleges general emotional distress damages. This court has considered similar arguments in the past. See Paulsen v. Ability Ins. Co., 906 F.Supp.2d 909. In that case, the court determined that emotional distress type damages are not sufficient when the plaintiff cannot show a pecuniary loss. Id. at 915. "The survivability of a claim depends upon what pecuniary damages are supported by the facts." Id. The plaintiff has not alleged any pecuniary damages, other than attorney fees, which are not recoverable when the full amount of the insured's loss has been covered. SDCL 58-12-3. Accordingly, the plaintiff does not have a claim against the defendant and the motion to dismiss should be granted.

7

## II. TriPlus Administrative's Motion to Dismiss

TriPlus Administrative moved for dismissal pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(2), and/or 12(b)(6). The basis for the motion to dismiss is that TriPlus Administrative was not a party to the contract, had no contact with the plaintiff, and is not subject to personal or general jurisdiction with this court as required by 12(b)(2). The plaintiff has advanced the theory of alter egos, which would allow the court to find jurisdiction over this defendant because the defendant that is subject to personal jurisdiction and the one contending no jurisdiction exists are working in concert. Defendant TriPlus Administrative also moves to dismiss based on failing to state a claim upon which relief may be granted under 12(b)(6) and failure to plead with requisite facts to maintain a fraud action.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991). The South Dakota long-arm statute confers jurisdiction to the fullest extent possible under the Constitution. Thus, the court's inquiry is whether this claim satisfies due process. Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995). "In order to constitutionally assert personal jurisdiction over a non-resident defendant, traditional notions of fair play and substantial justice must not offended." Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 225 (8th Cir. 1987). The defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The must be a "substantial connection" between the defendant and the forum state, meaning the defendant must "purposefully direct" an action "toward the forum state." Austad Co., 823 F.2d and 226.

8

There are two types of personal jurisdiction that may exist over a party: general and specific. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-415 (1984). General jurisdiction requires the party to have had contacts with the forum that are "so continuous and systematic" that they do not have to arise out of the party's contacts with the forum or the cause of action itself. Id. The court can also have specific jurisdiction over a party, which "unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." Myers v. Casino Queen, Inc., 689 F.3d 904, 910 (8th Cir. 2012). The issue in this motion is whether there is specific jurisdiction, rather than general jurisdiction.

There is a five factor test for determining personal jurisdiction. The test includes: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residences; and (5) the convenience of the parties. Land O Nod Co. v. Bassett Furnitiure Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983). The most weight is given to the first three factors. Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

At the onset, it is clear that the defendant in question would not be subject to personal jurisdiction if it were the only one that the lawsuit was filed against. The defendant does not have any offices in South Dakota, does not own any property, does not do business in South Dakota, and does not derive revenue from actions in South Dakota. The plaintiff admits as much, but contends that the defendant is a subsidiary corporation that is the alter ego or agent or both of the other defendants, which allows the court to find personal jurisdiction. "A parent corporation is liable for the acts of its subsidiary under the instrumentality exception when (1) the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality

9

of the former; and (2) adherence to the rule of corporate separateness would produce injustices and inequities." Glanzer v. St. Joseph Indian School, 438 N.W. 2d 204 (S.D. 1989).

To find jurisdiction, the court would be required to pierce the corporate veil, something which the 8th Circuit has held is a "drastic approach authorized only in the most extreme situations." Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt. Inc., 519 F.2d 634, 637 (8th Cir. 1975). "The fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation." Id., quoting Frazier, III v. Alabama Motor Club, Inc., 349 F.2d 456 (5th Cir. 1965).

The South Dakota Supreme Court has created an eleven factor test, articulated in Glanzer, which is used to determine the first prong of the instrumentality exception. They include:

(a) The parent corporation owns all or most of the capital stock of the subsidiary;

(b) The parent and subsidiary corporations have common directors or officers;

(c) The parent corporation finances the subsidiary;

(d) The parent corporation subscribes to all capital stock of the subsidiary or otherwise causes its incorporation;

(e) The subsidiary has grossly inadequate capital;

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary;

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(i) The parent corporation uses the property of the subsidiary as its own;

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

(k) The formal legal requirements of the subsidiary are not observed.

Glanzer, 438 N.W. 2d at 207.

This court considers these factors in making its decision on the motion to dismiss. These factors are not exhaustive and all need not be present to conclude the subsidiary is the instrumentality of the parent. Id. The Eighth Circuit has held that there is "[n]o all-embracing rule" to determine the relationship between related entities, but the circumstances of each case should be considered to determine if an entity has subjected itself to the jurisdiction of a state through the activities of another entity. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003).

The plaintiff makes a prima facie showing that there is at least an issue of fact regarding whether this defendant was a mere instrumentality of the parent corporation and, therefore, the plaintiff meets the first Glanzer prong. The plaintiff explained all eleven factors of the first prong and presented adequate allegations that would make dismissal based on the first prong improper.

The plaintiff fails to meet the second prong required by Glanzer. That prong requires that piercing the corporate veil be done to avoid injustices and inequalities. Glanzer, 438 N.W. 2d at

11

207. The party seeking to pierce the corporate veil must show that there is some material equitable reason for the court to (pierce the veil). Kansas Gas and Elec. Co. v. Ross, 521 N.W.2d 107. In this case, the plaintiff has already received full compensation from one defendant. He has not shown or presented any evidence as to why this defendant would be liable to him for any alleged breach of contract or tort. The plaintiff's allegations, if true, apply to whether AIC properly paid his insurance claims or whether AIC is liable to the plaintiff under a tort theory. There is no equitable reason to find TriPlus Administrative liable to the plaintiff through piercing the corporate veil, even if it can be shown that TriPlus Administrative was a subsidiary or alter ego corporation. As such, the Court should grant the motion to dismiss filed by defendant TriPlus Administrative.

## III. ARH's Motion to Dismiss

ARH moved for dismissal pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(2), and/or 12(b)(6). The arguments advanced are identical to the motion to dismiss by defendant TriPlus Administrative, as is much of the response by the plaintiff. The court should grant the defendant's motion based on the above analysis. The plaintiff has shown that there is a question of whether the defendant was an alter ego of another defendant but there is no equitable reason to hold this defendant liable and, therefore, no justification for piercing the corporate veil.

## CONCLUSION

The plaintiff has not brought forth sufficient allegations to establish a prima facie case for piercing the corporate veil with respects to defendant TriPlus Administrative and ARH. He also has not shown that he is entitled to any relief under Rule 12(b)(6) with respect to defendant TriPlus. Accordingly,

12

IT IS ORDERED:

1. The motions at Doc. 23, Doc. 25, and Doc. 48 are granted.

2. The claims against TriPlus Services, Inc., TriPlus Administrative Services, Inc., and Ability Reinsurance Holdings (Bermuda) Limited, are dismissed.

3. No costs shall be assessed.

DATED this 23rd day of September, 2015.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge