

FILED
MAR 31 2016

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| HOWARD LANCE METTLER, ATTORNEY IN FACT FOR HOWARD METTLER; AND HOWARD METTLER,<br><br>Plaintiffs,<br><br>vs.<br><br>ABILITY INSURANCE COMPANY, f/k/a MEDICO LIFE INSURANCE COMPANY and ABILITY REINSURANCE (BERMUDA) LTD.,<br><br>Defendants. | 1:14-CV-01021-CBK<br><br><br>ORDER |

Plaintiffs filed suit on September 25, 2014, against defendants Ability Insurance Company, Ability Reinsurance (Bermuda) LTD., and three additional companies alleged to be in association with or acting together to provide long term nursing home care insurance. Plaintiffs set forth in the original complaint, *inter alia*, that plaintiff Howard Mettler contacted an attorney to seek payment from defendants for nursing home benefits allegedly due on a policy issued by Medico. Plaintiffs recited in the complaint that pre-suit mediation was cancelled by defendant, rescheduled, and failed. Plaintiffs went on to allege that, following failed mediation, defendant sent a check for $103,743.75 to plaintiffs' attorney, representing the payment as an "accommodation." In the complaint's breach of contract claim, plaintiffs referred to the foregoing amount as five years of accumulated contract damages and interest. Plaintiffs thereafter refer to the alleged failure and refusal to earlier pay benefits claimed to be due in support of their tort claims for breach of good faith and fair dealing, fraud and misrepresentation, and punitive damages. Plaintiffs contend that, even if contract payments were eventually made, plaintiff is entitled to pursue tort damages for out-of-pocket expenses expended in obtaining the contract benefits, emotional distress damages related to having lived without the insurance benefits for several years, damages for "betrayal" and punitive damages for Ability's claims handling practices.

Defendant Ability Insurance Company filed a motion to dismiss for failure to state a claim wherein it referred to the above payment as an "accommodation" and as "extra-contractual" payments. Defendant stated in its brief that plaintiffs "inappropriately referenced" the confidential mediation in the complaint.

Plaintiffs thereafter sought and received permission to substitute certain Triplus companies for certain Ability companies and file an amended complaint which set forth additional allegations. Ability withdrew its motion to dismiss and filed an answer to the amended complaint.

The Triplus defendants filed a motion to dismiss for failure to state a claim, on the basis that plaintiffs were fully compensated with interest for their contract claims, and lack of personal jurisdiction. One of the Ability companies filed a motion to dismiss the amended complaint on the same basis. In their response to those motions, plaintiffs reference the $103,743.75 payment to plaintiffs "after he threatened suit."

Plaintiffs have throughout their filings repeatedly claimed that defendants and former defendants engaged in a scam to withhold policy payments to policy holders through unfair claims adjustment practices, allegedly misrepresenting to policy holders what is actually covered by defendants' long term care policies, and improperly evading legal action by changing corporate entity names and funneling improperly retained premiums to offshore entities and accounts. Plaintiffs cite to cases in other jurisdictions that have resulted in plaintiffs' verdicts for similar alleged conduct.

The motions to dismiss were granted, the court finding no basis for piercing the corporate veil with respect to the Triplus companies and one of the Ability companies.

Ability filed a motion for summary judgment, contending the breach of contract claim must be dismissed because there was no coverage for assisted living care and, even if the policy covered the care Howard Mettler was receiving, Ability paid any benefits that might have been due plus interest prior to institution of suit. Ability contends that the insurance bad faith tort claims fail because plaintiffs have no contract damages, since they were paid in full prior to institution of suit, and that Ability had a reasonable basis for denial of coverage, precluding any finding of bad faith. In its statement of undisputed material facts, Ability states that, on July 21, 2014, "as part of a settlement process" and as an "accommodation," Ability paid any claimed

2

insurance benefits still owing, together with interest. In its brief, Ability states that "during pre-suit settlement negotiations, plaintiff (sic) was further compensated with a check for $103,743.75."

In response to Ability's motion for summary judgment, plaintiffs filed a motion for summary judgment on their breach of contract claim. In their statement of undisputed material facts, plaintiffs contend that there has never been any settlement or release. Ability responded to plaintiffs' facts, contending that there is a fact issue as to whether the July 22, 2014, $103,743.75 payment was accepted as a complete payment for plaintiffs' contract claims. In their reply brief in support of their motion for summary judgment, plaintiffs contend that neither the check nor the letter accompanying the check include any release or satisfaction language.

Clearly, the payment made in July 2014, prior to institution of suit, is at issue as to whether claimed contract damages were paid pre-suit and whether that payment was a final settlement of any remaining contract claims. Both parties refer to that payment as having been made either as part of or after failed settlement negotiations.

Plaintiffs' counsel, without any basis for doing so, attached to his affidavit in support of his reply brief copies of email correspondence between himself and counsel for Ability dated July 23, 2104, and July 31, 2014, wherein a specific dollar amount of settlement demand was made, rejected, and a specific dollar amount counter offer was made.

Pursuant to South Dakota law, an attorney has a duty to maintain client confidentiality. SDCL 16-18-18. Pursuant to Rule 1.6 of the South Dakota Rules of Professional Conduct, a "lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent except for disclosures that are impliedly authorized in order to carry out the representation or the disclosure is" specifically permitted by an exception set forth in the Rule. Disclosure of a settlement demand and counter offer were not required in this case in conjunction with the motions for summary judgment. Further, Fed. R. Evid. 408 prohibits the use of settlement offers to prove or disprove the validity of any claim. The Advisory Committee notes to the 2006 amendment to Rule 408 provide the "protections of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury. Moreover, proof of statements and offers made in settlement would often have to be made through the testimony of attorneys, leading to the risks and costs of disqualification." The Advisory Committee notes are no less applicable when a party seeks

summary judgment before the Court. The implication made by counsel for plaintiffs in disclosing the emails is that Ability admits tort liability in excess of contract payments.

Sums requested in settlement negotiations should never be disclosed to the Court unless a judge is participating in mediation. There was no basis for including in the file copies of emails exchanged by the parties prior to institution of suit which set forth specific dollar amounts as a settlement demand and counter offer of settlement. Counsel for plaintiffs did so with disregard for the rules of ethics and with no apparent authority. In the more than 50 years that I have been a lawyer, I have never seen this done before. I do not intend to consider documents setting forth any such matters. I admonish counsel for plaintiffs for unethical conduct.

Counsel for plaintiffs also filed, as an attachment to his affidavit in support of his reply brief, a copy of an entire 857 page transcript of a jury trial from another jurisdiction held in 2012. The transcript was filed in violation of my Standard Operating Procedures and direction from the United States Court of Appeals for the Eighth Circuit that attaching lengthy documents, "without designating which specific facts contained therein created a genuine issue" or showed that there was no genuine issue of fact does "not meet the Rule 56 specificity requirement." Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004), (*quoting* with approval United States v. Gurley, 434 F.3d 1064 (8th Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in briefs.")

Good cause appearing,

IT IS ORDERED that attachment #1 to the fifth affidavit of Seamus W. Culhane, Doc. 87, is sealed and is of no legal significance.

DATED this 25th day of March, 2016.

BY THE COURT:

*[signature: Charles B. Kornmann]*
CHARLES B. KORNMANN
United States District Judge