

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| HOWARD LANCE METTLER, ATTORNEY IN FACT FOR HOWARD METTLER,<br><br>Plaintiff,<br><br>vs.<br><br>ABILITY INSURANCE COMPANY,<br><br>Defendant. | 1:14-CV-01021-CBK<br><br><br>MEMORANDUM OPINION AND ORDER |

Howard Lance Mettler, son of and attorney in fact for Howard Mettler ("Mettler"), filed a complaint against the defendant alleging breach of contract, breach of the implied covenant of good faith and fair dealing, common law fraud and misrepresentation, and statutory deceit. Plaintiff is also seeking punitive damages and attorney fees. These accusations are based upon a long-term care insurance policy purchased in 1988 by Howard Mettler through Medico Life Insurance Company ("Medico"). The policy has been assigned to Ability Insurance Company ("AIC") and AIC has assumed the responsibility to adjust, manage, and pay claims.

Both of the parties have made motions for summary judgment. Defendant has made a motion in support of summary judgment on plaintiff's claims of breach of contract, breach of good faith and fair dealing, common law fraud and misrepresentations, statutory deceit, as well as plaintiff's request for punitive damages and attorney fees. Plaintiff has made a motion in support of summary judgment on the following legal issues: (1) AIC was required to provide coverage to Mettler; (2) AIC must interpret ambiguous terms in favor of the policyholder; and (3) AIC was required to waive Mettler's premium upon receiving benefits under the policy for two months.

## FACTUAL BACKGROUND

Mettler bought a long-term care insurance policy from Medico in 1988. In addition, Mettler purchased a policy rider, which increased the maximum daily benefit to $87.50 per day. In 2007, Medico was acquired by AIC. In 2009, Mettler was diagnosed with a broken right leg, along with his pre-existing conditions of Alzheimer's, dementia, diabetes, and hypertension. His

doctor, Dr. Ostowski, determined Mettler required intermediate care. Pl.'s Ex. 59. On April 17, 2009, Dr. Ostrowski recommended that Mettler be admitted to Avera Eureka Health Care Center in Eureka, South Dakota, and Mettler was admitted. Id.

The policy defines "Long-Term Care" as "skilled nursing care, intermediate nursing care, or custodial care." "Skilled Nursing Care" and "Intermediate Nursing Care" are defined as:

> [M]edically necessary care that is prescribed in a physician's plan of care. This care uses professional nursing methods and procedures that are administered by licensed or certified health care personnel. It includes post-hospital care, rehabilitation nursing care, maintenance therapy, administration of medication, injections, and catheterization. It is NOT: custodial care; care that can be learned and given by unlicensed or uncertified medical personnel; routine health care services; routine administration of oral or nonprescription drugs; or general supervision of routine daily activities.

The policy defines "Nursing Facility" as:

> [A] facility or that part of one that is licensed as a skilled nursing facility or intermediate care facility by the state in which it is located. It must keep daily medical records for each patient and have a staff committee which includes a physician and/or [sic] director of nursing that meets at least on a quarterly basis to review the levels of care and the need for further confinement. It is NOT a place that is used primarily for: rest; a home for the aged; the care of drug addicts or alcoholics; educational care; or the care and treatment of mental diseases or disorders, other than those due to organic disease.

The policy's schedule explains the maximum number of days the policy will pay benefits during a period of confinement is 1,095 days, or three years. The policy expressly states: "The benefit we pay will be the actual charges made by the nursing facility or the Daily Benefit, *whichever is the lesser*." Def.'s Ex. A. (emphasis added).

In July of 2009, Mettler submitted a claim for benefits under the policy with AIC, and the claim was denied because allegedly Avera Eureka Health Care Center was an "assisted living" facility and did not qualify under the policy as a "nursing facility." AIC, nevertheless, paid fifty percent (50%) of the maximum daily benefit for three years, amounting to $47,906.25 in total, or $43.75 per day. Mettler's actual expenses at Avera Eureka Health Care Center were $55.00 per day. In August of 2012, AIC informed Mettler that he had exhausted the benefits under his

2

policy. On July 22, 2014, AIC, as an "accommodation," paid Mettler $47,906.25. In addition, AIC paid for another year of coverage at the maximum daily benefit rate, plus interest, amounting to $55,837.50. In total, AIC paid Mettler $103,743.75 as an "accommodation" on July 22, 2014. Plaintiff filed a complaint in federal court on September 25, 2014.

On or about May 15, 2016, Howard Mettler died. Proceedings to appoint a personal representative of the estate may or may not be pending. A motion to substitute parties has not been made.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56 requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant must support the motion with evidence admissible at trial in order to meet its initial burden of showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), *superseded on other grounds by* Celotex Corp v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If undisputed facts fail to establish each required element in a cause of action, summary judgment is proper." McKie v. Huntley, 2000 S.D. 160, ¶ 17, 620 N.W.2d 599, 603 (*citing* Groseth Int'l, Inc. v. Tenneco Inc., 410 N.W.2d 159, 169 (S.D. 1987)). The nonmoving party must "substantiate his allegations with enough probative evidence to support a finding in his favor" by citing to particular materials in the record which support the assertion that a fact is genuinely disputed." Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 206 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the admissible evidence in a light favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Paulsen v. Ability Ins. Co., 906 F. Supp. 2d 909, 911 (D.S.D. 2012) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986)).

3

## ANALYSIS

### A. Application of South Dakota Law

Subject matter jurisdiction is established by diversity of citizenship in this case, and South Dakota law applies. SDCL § 53-1-4 states: "A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." SDCL § 53-1-4. "Generally, unless the parties agree otherwise, an insurance contract is 'made' at the place where the last act necessary to its completion is accomplished." Great W. Cas. Co. v. Hovaldt, 603 N.W.2d 198, 201 (S.D. 1999). The place of performance in this case was at Avera Eureka Health Care Center in Eureka, South Dakota. Mettler signed the policy in Eureka, South Dakota, and the policy was delivered to Mettler in Eureka, South Dakota. Therefore, South Dakota law governs the substantive issues in this case.

### B. Breach of Contract

To establish a breach of contract under South Dakota law, a plaintiff must show: (1) an enforceable promise, (2) breach of that promise, and (3) resulting damages. Bowes Constr., Inc. v. S. Dakota Dep't of Transp., 2010 S.D. 99, ¶ 21, 793 N.W.2d 36, 43. The measure of damages, as set out in SDCL § 21-2-1, allows compensation to "the party aggrieved for all the detriment proximately caused . . . or which, in the ordinary course of things, would be likely to result therefrom." McKie v. Huntley, 2000 S.D. 160, ¶ 14, 620 N.W.2d 599, 603. In an action for breach of contract, the damages should not exceed the amount he would have gained by full performance. Ducheneaux v. Miller, 488 N.W.2d 902, 915 (S.D. 1992). "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." SDCL § 21-2-1. The ultimate goal in awarding damages for breach of contract is to "place the injured party in the position he or she would have occupied if the contract had been performed." Ducheneaux, 488 N.W.2d at 915. The prejudgment interest is in place to provide the injured party compensation for any "loss of use" damages. *See* Casper Lodging, LLC v. Akers, 871 N.W.2d 477, 499 (S.D. 2015) (noting that prejudgment interest "seeks to compensate the injured party for this wrongful detention of money owed").

Mettler's actual cost for the care he received was $55.00 per day at Avera Eureka Health Care Center. The policy expressly states that AIC will pay the actual cost of care, or the maximum daily benefit, whichever is lesser. Because $55.00 is lesser than plaintiff's maximum

4

daily benefit of $87.50, AIC was obliged to pay $55.00 per day. As stated above, AIC was obliged to pay benefits for 1,095 days, or three years. Therefore, Mettler was entitled to $60,225.00 under the policy.

From July of 2009 to August of 2012, AIC paid Mettler half of the maximum daily benefit allowed under the policy for three years, totaling to $47,906.25, or $43.75 per day. The difference of what Mettler was owed under the policy from what AIC actually paid is $12,318.75. Prejudgment interest, pursuant to SDCL § 21-1-13.1, is $4,077.51. Accepting plaintiff's argument regarding waiver of premium, the maximum additional amount owed to plaintiff was $2,652.00. This amount reflects the policy coverage duration of 36 months subtracted by the waiting period of two months, multiplied by $78.00, which is the monthly premium cost. Therefore, in August of 2014, the largest possible compensatory damages incurred by Mettler was $19,048.26.

On July 22, 2014, AIC delivered Mettler a check for $103,743.75 as an "accommodation." AIC asserts the "accommodation" represented the other half of the maximum daily benefit allowed under the policy, an additional year at the maximum daily benefit rate of $87.50 per day, plus interest of $23,900.00. Even if the Court accepts plaintiff's largest possible calculation of compensatory damages under the contract, AIC still overpaid Mettler by $84,695.49. Plaintiff is unable to show "clearly ascertainable damages" relating to his breach of contract claim. SDCL § 21-2-1. Plaintiff has failed to meet his burden of showing a genuine issue of material fact as to whether Mettler incurred clearly ascertainable damages, an essential element of a breach of contract claim. Therefore, defendant is entitled to summary judgment on plaintiff's breach of contract claim. There are no genuine issues of material fact as to this issue.

## C. Bad Faith

The next issue is whether defendant is entitled to summary judgment on plaintiff's claim of bad faith. "Before undertaking a study of the law of 'bad faith,' it is necessary to understand the difference between 'first party' and 'third party' insurance coverage." Roger M. Baron, When Insurance Companies Do Bad Things: The Evolution of the "Bad Faith" Causes of Action in South Dakota, 44 S.D. L. Rev. 471, 472–73 (1999). "Third party insurance typically protects the insured against claims of third parties which may be made against him/her." Id. "First party insurance is a broad term that is utilized to describe just about everything else other than third party coverage." Id. "[A]n understanding of the distinction between first party and third party

5

coverage is critical to understanding the evolution of the bad faith causes of action." Id. Here, AIC issued a "first party" insurance policy to Mettler. The elements of a first party bad faith action in South Dakota are:

> (1) The existence of a contract of insurance;
> (2) A loss compensable under the terms of the policy;
> (3) The absence of a reasonable basis for denial of the claim; and
> (4) The insurer knew there was not a reasonable basis to deny the claim or that the insurer acted in reckless disregard of the existence of a reasonable basis to deny the claim.

Brooks v. Milbank Ins. Co., 2000 S.D. 16, ¶ 15, 605 N.W.2d 173, 177–78; See Walz v. Fireman's Fund Ins. Co., 1996 S.D. 135, 556 N.W.2d 68; Isaac v. State Farm Mut. Auto. Ins. Co., 522 N.W.2d 752 (S.D. 1994); Matter of Cert. of a Question of Law, 399 N.W.2d 320 (S.D> 1987) See also Roger M. Baron, When Insurance Companies Do Bad Things: The Evolution of the "Bad Faith" Causes of Action in South Dakota, 44 S.D. L. Rev. 471, 472–73 (1999). Based on the analysis above, plaintiff does not have a "loss compensable under the terms of the policy." Id. Therefore, plaintiff is lacking an essential element of his bad faith claim. There are no genuine issues of material fact as to this claim.

Moreover, plaintiff is not able to seek relief for punitive damages on his claim of bad faith. Punitive damages through bad faith actions are not recoverable in South Dakota absent a showing of entitlement to compensatory damages. Schaffer v. Edward D. Jones & Co., 521 N.W.2d 921, 928 (S.D. 1994). "The rationale of the rule requiring actual damages before punitive damages may be awarded is that we do not punish conduct, no matter how malicious or reprehensible, which in fact causes no injury." Id., (*quoting* Dicker v. Smith, 215 Kan. 212, 523 P.2d 371, 375 (1974)). Therefore, plaintiff is not entitled to punitive damages, as a matter of law.

Plaintiff contends he is entitled to general emotional distress damages. This Court has considered similar arguments in the past. *See* Paulsen v. Ability Ins. Co., 906 F.Supp.2d 909. In *Paulsen*, this Court determined that emotional distress damages are not appropriate when the plaintiff cannot show a pecuniary loss. Id. at 915. "The survivability of a claim depends upon what pecuniary damages are supported by the facts." Id. Plaintiff has no pecuniary damages in this case. Therefore, plaintiff is not entitled to emotional damages, as a matter of law.

The plaintiff has also requested recovery of attorney fees, however, "when a tender is made by such insurance company, exchange or self-insurer before the commencement of the

6

action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed." SDCL § 58-12-3. The defendant made a tender before the commencement of the action in the amount of $103,743.75. The tender was accepted and plaintiff retained the money. Therefore, plaintiff is not entitled to attorney fees under his bad faith claim.

Plaintiff must be able to show damages for his tort claim of bad faith. "Broadly speaking, the word 'tort,' means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages." Pickering v. Pickering, 434 N.W.2d 758, 761 (S.D. 1989) (*quoting* Richard P. v. Superior Court (Gerald B.), 202 Cal.App.3d 1089, 249 Cal.Rptr. 246 (1 Dist. 1988)). Because there are no pecuniary damages under the policy, South Dakota law prohibits plaintiff from recovering punitive damages, damages for alleged emotional distress, and attorney fees. Therefore, plaintiff is not able to meet his burden of showing a genuine issue of material fact as to whether plaintiff may be awarded damages under a claim of bad faith. Defendant is entitled to summary judgment on plaintiff's claim of bad faith. There are no genuine issues of material fact as to this issue.

### D. Common Law Fraud and Misrepresentation

The next issue is whether defendant is entitled to summary judgment on plaintiff's claims of common law fraud and misrepresentation. In South Dakota, the essential elements of common law fraud and misrepresentation are:

> [T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he or she did in fact rely on it and was induced thereby to act to his or her injury or damage.

Stene v. State Farm Mut. Auto. Ins. Co., 583 N.W.2d 399, 404 (S.D. 1998); Grynberg v. Citation Oil & Gas Corp., 1997 S.D. 121, ¶ 24, 573 N.W.2d 493, 502. Plaintiff alleges that AIC "withheld information about the policy definition of 'nursing facility" as a fact to support his allegation of misrepresentation." Id. Plaintiff has mistaken a misrepresentation of fact for an interpretation of the policy. Defendant did not lie or attempt to hide the language or terms of the policy. Plaintiff had the policy for his review. Defendant merely made a determination as to how it was going to handle the policy. More importantly, plaintiff was not induced to act to his

7

detriment as a result of AIC's decision not to pay on the policy. The act that caused plaintiff's alleged damages was the formation of an insurance contract. That is, plaintiff was not induced to act to incur alleged damages as a direct and proximate result of AIC's decision to not pay benefits on the policy. The only damages plaintiff allegedly incurred were compensatory in nature relating to AIC's policy issued in 1988. While AIC may have been careless in its initial decision not to pay benefits to Mettler, AIC did not make a factual misrepresentation in its interpretation of the policy. Arguing whether the decision was proper or reasonable falls under plaintiff's bad faith claim. Therefore, defendant is entitled to summary judgment on plaintiff's claim of common law fraud and misrepresentation. There are no genuine issues of material fact as to this issue.

### E. Statutory Deceit

The last issue is whether defendant is entitled to summary judgment on plaintiff's claim of statutory deceit. SDCL § 20-10-1 states: "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

A deceit within the meaning of § 20-10-1 is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
(3) The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
(4) A promise made without any intention of performing.

SDCL § 20-10-2.

Here, plaintiff alleges that the deceit happened when AIC told him that he did not qualify for certain benefits under his policy, "despite knowing that he should qualify when the laws of insurance are applied to ambiguous policy provisions . . ." Compl., ¶ 114. Again, defendant made a determination as to whether plaintiff was entitled to the benefits of the policy. AIC did not make an untrue statement, an assertion which was not true, suppression of a fact, or promise when informing plaintiff of its interpretation of the policy. Defendant had the ability to look at his policy and review it in its entirety. Moreover, Mettler did not incur damages as a result of

8

any factual representation made by AIC. All damages incurred by Mettler relate back to a policy purchased from Medico in 1988. Therefore, defendant is entitled to summary judgment on plaintiff's claim of statutory deceit. There are no genuine issues of material fact as to this matter.

**F. Other Matters**

Plaintiff raises issues about alleged misconduct by AIC in dealing with other insureds. This is not, however, a class action. It is certainly questionable conduct for AIC to go through an unsuccessful mediation session with a United States Magistrate Judge and then, before plaintiff's attorney arrives back in his office, pay what AIC calls "an accommodation." An accommodation is in the nature of a gift rather than simply paying a lawful debt. The fact remains that plaintiff was not only paid in full before a lawsuit was started, but overpaid to the extent of more than $84,000.00. There is no claim before the Court from AIC as to this overpayment and any such claim is now barred as an issue that could have been raised in this lawsuit. AIC, in that sense, has been "hoisted on its own petard." AIC, in calculating interest due, failed to use the annual interest rule, which is the law in South Dakota. Specifically, at the end of one year, the interest is added to the principal and interest begins to run on that amount, continuing on each year in that manner.

Regardless of whether the payments were accommodations or simply the payment of monies due, I also recall the admonition that "no good deed goes unpunished."

As previously stated, Metter died on or about May 15, 2016. Notice of this matter was provided to the Court on July 14, 2016. It is elementary that a power of attorney is no longer effective upon the death of the grantor. Howard Lance Mettler is without legal authority to act as plaintiff. Plaintiff has advised that proceedings to appoint a personal representative of the estate are "pending." Neither party discusses Fed. R. Civ. P. 25(a). The claims of Mettler would not be extinguished by his death. Plaintiff failed to meet the requirements of this federal rule. It is not sufficient that some unknown action is pending, whatever that means. Fed. R. Civ. P. 25(a)(1) tells us, in part: "If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." The deadline to file a motion to substitute parties in this case was October 12, 2016. This rule provides another reason why the action should be dismissed.

**ORDER**

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 63, for summary judgment on plaintiff's claim of breach of contract, breach of the implied covenant of good faith and fair dealing, common law fraud and misrepresentation, statutory deceit, and punitive damages are granted.

2. There are no genuine issues of material fact as to the claims of plaintiff.

3. Plaintiff's motion, Doc, 72, for summary judgment is deemed moot.

DATED this 21st day of October, 2016.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge